# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| YONEL MAXIS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 1:18-cv-00994-TWP-DLP ) |
| JOHN LAYTON, BEN LOUZON, JOSE QUINONES, JAMES ELLIS, JASON LAKAS, JOSHUA JORDAN, TYLER MCCARTHY, JUSTIN LAMB, JASON CARNES, MICHAEL JABKIEWICZ, ROBERT AMOS, Corporal SMITH, SHANIKA BULLOCK, CHAD MEEKS, JAMES KOERS, Corporal COX, DEIDRE BAKER, and CORRECT CARE SOLUTIONS, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Correct Care Solutions ("CCS") ([Filing No. 14](#)). Plaintiff Yonel Maxis ("Maxis") initiated this action, seeking monetary damages for violations of his Fourth and Fourteenth Amendment rights while he was incarcerated in the Marion County Jail. CCS moved to dismiss Maxis' sole claim against it, arguing that the allegations do not support a *Monell* claim against CCS. For the reasons that follow, the Court **grants** CCS's Motion to Dismiss.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of Maxis as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Maxis is a dark-skinned, black male from Haiti, who speaks Haitian Creole and he knows only a few words in English. When he tried to board an IndyGo bus on July 20, 2017, he encountered a language barrier and was prevented from boarding the bus. Indianapolis Metropolitan Police Department ("IMPD") officers arrived, noted a language barrier, and tried to communicate with Maxis using hand signals. They eventually handcuffed Maxis and pulled him away from the scene. Maxis was suffering from a mental impairment at the time of his arrest. He was taken to the Arrestee Processing Center following his arrest ([Filing No. 1 at 4](Filing No. 1 at 4)–5).

The following morning, on July 21, 2017, Maxis was transported to the Marion County Jail. While being placed in the back of the transport wagon, Marion County Sheriff's deputies pushed Maxis and used tasers on him multiple times. He was physically beaten by the officers. *Id.* at 5–6. Upon arrival at the Marion County Jail, Maxis was taken to a cell and a nurse conducted an initial screening of him. The nurse used the "language line" and Google to translate when communicating with Maxis. The nurse found no lesions or abrasions and determined that Maxis could be placed in general population. Another medical provider noted that Maxis had pain in his left wrist. Maxis underwent a mental health screening and was cleared for segregation. *Id.* at 6. He was placed under suicide watch because of possible narcotic ingestion. *Id.* at 7. The medical staff and the jail personnel were aware of Maxis' language barrier, which hampered their ability to effectively communicate and interact with him. *Id.* at 5–7.

Later in the day, sheriff's deputies entered Maxis' cell, grabbed him by the shirt, took him to the ground, struck him three times, pulled on his arm, and placed him in handcuffs. One of the officers eventually told the commander that another deputy spoke Haitian and could possibly assist with communication. *Id.* at 7.

On July 22, 2017, Maxis was transferred to a suicide watch cell. While his clothing was being removed, law enforcement officers struck Maxis, held him, and applied pressure to pressure points on his body. A medical provider, employed by CCS,[1] later evaluated Maxis and noted that he was asleep and would not wake up, but he was breathing. The CCS employee evaluated Maxis on July 23, 2017 and noted that he could not understand Maxis because of the language barrier, but he observed Maxis' speech was pressed and he was anxious. He found Maxis to be a high suicide risk (Filing No. 1 at 8).

On July 24, 2017, another CCS employee observed that Maxis was naked because of flooding in his cell. She noted that she was going to use the language line to assist with an assessment after Maxis returned from his court appearance. Later that evening, law enforcement officers came to Maxis' cell to retrieve a cup. They directed Maxis to give them the cup, however, he did not respond because he did not understand what they wanted him to do. When Maxis did not respond, additional law enforcement officers came to his cell, and they used physical force against him, including using a taser, to retrieve the cup. CCS staff were summoned to remove the taser prongs from Maxis. One of the medical personnel noted that she could not take Maxis' blood pressure because his handcuffs were too tight. *Id.* at 8–9.

Maxis was assessed on July 25, 2017, by CCS medical staff. He was observed lying on the floor of his cell. When he tried to move, he appeared to have difficultly lifting himself up to his bed. A translator was utilized to help with communication. Maxis explained that he could not get up, he was weak, he had been refusing food, he was scared, and he did not understand what was happening during the last few days. He was observed to have poor insight and judgment, was withdrawn, was shaky, and did not look well. Maxis also was observed to be fatigued and

---

[1] CCS contracts with the Marion County Sheriff's Office to provide medical care and treatment to the inmates at Marion County Jail (Filing No. 1 at 4).

weakened with no sensation in his left leg, which was swollen. Maxis was given a smock and a blanket. He did not eat, and other inmates indicated that he had not been eating but was giving away his food. *Id.* at 9–10.

On July 26, 2017, CCS staff interacted with Maxis, noting that he had not eaten in six days, his left leg was not moving, his skin was pink, and his extremities were cold. They were unable to obtain a history from Maxis because of the language barrier. Maxis underwent a CT scan, x-ray, and ultrasound, and it was decided that he needed to be transported to Eskenazi Hospital for further treatment. He received treatment at the hospital from July 26, 2017 through August 4, 2017, when he was released to his family and returned home to Florida ([Filing No. 1 at 10](#)–11).

On July 21, 2017, a criminal matter was filed in state court against Maxis for obstructing traffic and resisting law enforcement. On July 25, 2017, a motion to dismiss all charges was filed by the state because the state declined to prosecute. The state court dismissed all charges against Maxis the same day. *Id.* at 11.

Maxis filed this lawsuit on March 29, 2018. He brings claims against John Layton (the Sheriff of Marion County, Indiana), numerous law enforcement officers, and CCS. Maxis requests monetary damages for his claims of violation of his Fourth and Fourteenth Amendment rights against law enforcement officers, *Monell* claims against Sheriff Layton, and a *Monell* claim against CCS ([Filing No. 1](#)). On April 19, 2018, CCS filed the instant Motion asking the Court to dismiss the *Monell* claim asserted against it ([Filing No. 14](#)).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations

4

in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

CCS argues that the Court should dismiss the single *Monell* claim asserted against it because, other than stating that CCS violated his constitutional rights by way of an unspecified practice or policy, Maxis failed to plead any factual basis for his claim against CCS. CCS asserts that Maxis' bare allegation that a policy, practice, or procedure violated his constitutional rights is insufficient to adequately plead a *Monell* claim.

To allege a viable *Monell* constitutional claim against CCS, Maxis must allege with sufficient facts that he suffered a constitutional deprivation as the result of an express policy or custom of CCS.[2] *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *Monell* liability attaches when an express policy, a widespread practice, or a person with final policymaking authority is the moving force behind a constitutional violation. *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995). "[T]o survive a motion to dismiss, a plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the [defendant] maintained a policy, custom, or practice' that was the moving force behind the constitutional violations." *Freeman v. City of Crown Point*, 2014 U.S. Dist. LEXIS 16595, at *23 (N.D. Ind. Feb. 11, 2014) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

Stated differently, an unconstitutional policy that may give rise to § 1983 liability falls into three categories:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a wide-spread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy making authority.

*Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (citation and quotation marks omitted).

The Seventh Circuit has explained that, in cases involving a "widespread practice" or "gaps in express policies," the complaint must plead facts that show "there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has

---

[2] CCS acknowledges that it is to be treated as a governmental entity for purposes of § 1983 *Monell* claims. *See Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) ("For purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity.")

acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). The Seventh Circuit has further explained that "if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017). Additionally, "in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." *Id.* at 381.

CCS argues that Maxis' Complaint insufficiently alleges only a threadbare recitation of the elements of a *Monell* claim without factual support. It points to paragraphs 191–194 of the Complaint to show Maxis only alleged, "CCS implemented a policy or custom that failed to protect Mr. Maxis' rights under the Fourth and/or Fourteenth Amendments to the United States Constitution," that "[a] culture of indifference and tolerance of employees' unlawful actions has permeated the department," that "CCS maintained a custom or practice with the force of law that resulted in some or all of Mr. Maxis' injuries," and that "CCS had inadequate training concerning the constitutional rights of individuals," which "failure to train amounted to the deliberate indifference to Mr. Maxis." ([Filing No. 1 at 22](#)–23.) CCS asserts that these legally conclusory statements are not factually sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 and the Complaint contains no allegations of any specific policies or practices of CCS. The Complaint contains no allegations of how any unspecified policies or practices failed to protect Maxis or were deliberately indifferent to him. Additionally, CCS asserts, the Complaint fails to allege how any unspecified policies or practices contributed to Maxis' constitutional deprivations.

CCS asserts that Maxis' Complaint states jurisdictional allegations in that the "Marion County Sheriff's Office contracts with Correct Care Solutions to provide medical care and

treatment to its inmates," and "Correct Care Solutions is a for-profit foreign entity with its principle place of business in Tennessee." (Filing No. 1 at 4.) However, CCS argues, the only factual allegations about CCS employees allege that the medical staff continually treated Maxis after he was allegedly injured by law enforcement staff until they eventually transferred him to the hospital. There are no factual allegations about wrongful medical treatment or injurious practices, customs, policies, or procedures. Therefore, CCS asserts, the Complaint fails to allege a viable *Monell* claim against CCS, and the claim must be dismissed.

In response, Maxis asserts that the Complaint alleges sufficient well-pleaded facts to give CCS fair notice of the *Monell* claim against it and to make a facially-plausible showing that CCS is liable for Maxis' injuries. Maxis asserts that Count XII of his Complaint sets forth "numerous ways that CCS is liable under *Monell*, including implementing a policy or custom that failed to protect Mr. Maxis' constitutional rights, allowing a culture of indifference, tolerance of employees' unlawful actions, and inadequate training of its employees concerning the constitutional rights of individuals." (Filing No. 18 at 4.)

Maxis further asserts that CCS's argument ignores the facts asserted in the factual background of the Complaint,[3] which allege the physical force that was used against Maxis, Maxis' numerous independent interactions with several different CCS employees, and CCS's role in the treatment of inmates at the jail. The CCS medical staff knew Maxis did not speak English, and they also knew that they had resources to address the language barrier. Yet, as the Complaint alleges, during most of Maxis' communications with CCS medical staff, the language barrier prevented medical staff from getting accurate or complete information from Maxis and hampered

---

[3] In support of his argument, Maxis directs the Court to paragraphs 29, 35, 39–41, 43–60, 63, 65–71, 73–77, 79–85, 87–92, and 188–195 of his Complaint.

their ability to provide adequate treatment. These factual allegations, Maxis argues, are enough to adequately plead a *Monell* claim against CCS and to survive a motion to dismiss.

The specific allegations relied upon by Maxis show that he did not speak English, he was physically beaten by law enforcement officers multiple times, CCS medical staff promptly assessed and treated him, language assistance generally was not used during interactions with him, and he was eventually transferred to a hospital for treatment. The allegations contained within Count XII of the Complaint state only threadbare elements of a *Monell* claim against CCS. There is not a sufficient factual basis alleged to support a claim that CCS had an express policy (or lack thereof where one was necessary), a widespread practice, or a person with final policymaking authority that was the moving force behind a constitutional violation. Thus, dismissal of the *Monell* claim against CCS is appropriate.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** CCS's Motion to Dismiss ([Filing No. 14](#)). Because Maxis might have a viable claim under some set of facts that have not been sufficiently alleged, his claim against CCS is **dismissed without prejudice**. If Maxis deems it appropriate, he is granted **fourteen (14) days** from the date of this Order to amend his Complaint to replead the *Monell* claim against CCS.

**SO ORDERED.**

Date: 12/7/2018

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alex Ooley
BOEHL STOPHER & GRAVES, LLP (New Albany)
aooley@bsg-in.com

Erman M. Ooley
BOEHL STOPHER & GRAVES, LLP (New Albany)
mikeooley@bsg-in.com

Brooke Smith
KEFFER BARNHART LLP
Smith@KBindy.com

Curtis Paul Moutardier
BOEHL STOPHER & GRAVES LLP
cmoutardier@bsg-in.com

Scott Leroy Barnhart
ATTORNEY AT LAW
barnhart@kbindy.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL
anne.harrigan@indy.gov